IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DANIEL HECTOR LOPEZ PABLO, JOSE FLORES, and MELANIE LOPEZ HERNANDEZ,<br><br>    Plaintiffs,<br>v.<br><br>GRACE BUELL, PEPITA'S MEXICAN RESTAURANT & CANTINA, INC., and PAPITO'S MEXICAN RESTAURANT LLC,<br><br>    Defendants. | Case No.: 3:24-cv-01798-AN<br><br>OPINION AND ORDER |

Plaintiffs Daniel Hector Lopez Pablo ("D. Lopez"), Jose Flores ("Flores"), and Melanie Lopez Hernandez ("M. Lopez") bring this action against defendants Grace Buell ("Buell"), Pepita's Mexican Restaurant & Cantina, Inc. ("Pepita's," and collectively with Buell, "Pepita defendants"), and Papito's Mexican Restaurant LLC ("Papito's"), alleging unpaid wages and overtime in violation of Oregon Revised Statutes ("ORS") §§ 652.140 and 652.150 and discrimination in violation of ORS § 652.355. Plaintiffs also seek liquidated damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216. On November 27, 2024, plaintiffs filed this Motion to Dismiss, ECF [15], seeking to dismiss the Pepita Defendants' counterclaims. After reviewing the parties' pleadings, the Court finds that oral argument will not help resolve this matter. Local R. 7-1(d). For the reasons stated below, plaintiffs' motion is GRANTED. The Court also dismisses *sua sponte* plaintiffs' state law discrimination claim.

## LEGAL STANDARD

Federal courts are courts of limited jurisdiction. U.S. Const. art. III, § 2. As such, a federal court is to presume "that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The party invoking jurisdiction has the burden of establishing the court's jurisdiction. *Id.*

1

Federal Rule of Civil Procedure 12(b)(1) authorizes a motion to dismiss for lack of subject matter jurisdiction. Dismissal pursuant to Rule 12(b)(1) is appropriate when either the complaint or evidence extrinsic to the complaint demonstrates that the court lacks subject matter jurisdiction over the action. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Rule 12(b)(1) jurisdictional challenges can be either factual or facial. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* To resolve a facial attack, the court accepts the allegations as true, draws all reasonable inferences in the non-movant's favor, and "determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

Even where no party challenges a federal court's jurisdiction, "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006) ("[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.") (citation omitted). The Court must dismiss any case over which it lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

## BACKGROUND

Plaintiffs initiated this action in Washington County Circuit Court on May 9, 2024, alleging a state law unpaid wages and overtime claim. Notice of Removal, ECF [1], at 9-10 (all references to ECF page numbering). Plaintiffs filed an amended complaint on October 21, 2024, adding state law discrimination and FLSA liquidated damages claims. *Id.* at 16-25 ("FAC"). Defendants timely removed the action to this Court.

As for their state law unpaid wages and overtime and FLSA liquidated damages claims, plaintiffs name the Pepita defendants as their primary or joint employers and Papito's as a successor to Pepita's. FAC ¶¶ 10-13, 15, 17. Plaintiffs allege that the Pepita defendants terminated them, along with a

group of other employees, on January 15, 2024. *Id.* ¶¶ 13, 16, 19. D. Lopez alleges that the Pepita Defendants gave him checks for the two pay periods prior to his termination, from December 18, 2023, to January 14, 2024, and a check dated January 4, 2023, that were all returned by the bank marked "unpaid." *Id.* ¶ 14. D. Lopez alleges that he is owed wages for the three pay periods covered by these checks. *Id.* M. Lopez alleges that she is owed wages and overtime for the two pay periods she worked just prior to her termination. *Id.* ¶ 16. Flores alleges that he is owed wages for the two pay periods he worked just prior to his termination. *Id.* ¶ 19. Additionally, Flores alleges that he was a non-exempt employee and was required to be paid overtime during the two years, from January 2022 to January 2024, in which he was paid a fixed salary and that he is owed overtime wages for time worked over forty hours a week since January 2022. *Id.* ¶¶ 17-18, 20. Plaintiffs allege that defendants are liable to D. Lopez for an amount of $12,000.00, to M. Lopez for an amount of $3.352.46, and to Flores for an amount of $100,342.00 for their state law unpaid wages and overtime claim and equal amounts for their FLSA liquidated damages claim. *Id.* ¶¶ 28, 34.

As for their state law discrimination claim,[1] plaintiffs allege that on or about April 16, 2024, plaintiffs, through their attorney, delivered to defendants a demand letter asserting their wage and hour rights and making a wage claim. *Id.* ¶ 38. Plaintiffs allege that defendants failed to respond to the demand letter. *Id.* On May 9, 2024, plaintiffs filed their original complaint in state court. *Id.* ¶ 39. Plaintiffs allege that in response to plaintiff's original complaint, the Pepita Defendants asserted five state law counterclaims, one or all of which are baseless and brought in bad faith and with a retaliatory motive. *Id.* ¶ 40.

In response to plaintiffs' first amended complaint, the Pepita defendants re-assert the five state law counterclaims for (1) fraud/embezzlement, (2) conversion, (3) breach of fiduciary duty/duty of loyalty, (4) breach of implied covenant of good faith and fair dealing, and (5) breach of contract/failure to repay loans. Defs. Pepita's & Buell Answer, Aff. Defs. & Countercls. ("Pepita Defs. Answer"), ECF [11],

---

[1] ORS § 652.355 specifically prohibits employers from discriminating against an employee because the employee has made a wage claim or discussed, inquired about, or consulted an attorney or an agency about a wage claim. Or. Rev. Stat. § 652.355(1)(a).

¶¶ 53-79. The Pepita defendants allege that plaintiffs forged Buell's signature on various business checks, including checks made out to D. Lopez as "bonuses," to D. Lopez's wife Maria Hernandez ("Hernandez") and M. Lopez for "produce," and to Flores. *Id.* ¶¶ 56-57. As a result, the Pepita defendants allege that plaintiffs are liable to the Pepita defendants for the following approximate amounts: $210,300 as to D. Lopez and his wife Hernandez, $2,528 as to M. Lopez, and $9,400 as to Flores. *Id.* ¶¶ 59, 64, 71, 77. Moreover, the Pepita defendants assert that as a result of plaintiffs' breach of their fiduciary duty and duty of loyalty, Pepita's is entitled to recover all compensation that it paid to plaintiffs from May 9, 2022, to January 14, 2024, in the following approximate amounts: $164,000 in wages to D. Lopez, $1,699 in wages to M. Lopez, and $73,800 in wages to Flores, as well as profits and interest that plaintiffs garnered from the use of those amounts. *Id.* ¶ 72. Finally, the Pepita defendants allege that over the past six years, D. Lopez and Flores failed to repay $9,000 and $8,400, respectively, in loans made to them by the Pepita Defendants. *Id.* ¶¶ 78-79.

On November 27, 2024, plaintiffs moved to dismiss the Pepita defendants' counterclaims. Pls. Mot. to Dismiss Defs. Pepita's & Buell Countercls. ("Pls. Mot."), ECF [15].

## DISCUSSION

Because one of plaintiffs' claims arises under the FLSA, the Court has federal question jurisdiction under 28 U.S.C. § 1331. In bringing their five state law counterclaims, the Pepita defendants do not, and could not, invoke federal question or diversity jurisdiction. Instead, they appear to invoke supplemental jurisdiction under 28 U.S.C. § 1367. *See* Defs. Pepita's & Buell Opp'n Pls. Mot. to Dismiss Defs. Pepita's & Buell Countercls. ("Pepita Defs. Resp."), ECF [16], at 3 ("Because all such claims, affirmative defenses and counterclaims arise from the same facts this Court has jurisdiction to hear them."). Plaintiffs make a facial attack to subject matter jurisdiction, arguing that the Court lacks jurisdiction over the counterclaims because (1) the counterclaims are permissive, not compulsory, and (2) there are compelling reasons to decline to exercise supplemental jurisdiction.

Under 28 U.S.C. § 1367, federal courts may, in certain circumstances, exercise supplemental jurisdiction over claims and counterclaims that have no other basis for jurisdiction in federal

4

court. A court has jurisdiction over state law claims "that are so related to claims" brought under the court's original jurisdiction "that they form part of the same case or controversy under Article III[.]" 28 U.S.C. § 1367(a). In determining whether such a claim forms part of the same "case or controversy," the Court must determine whether the federal claim and state law claim arise from the same "common nucleus of operative fact." *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1195 (9th Cir. 2005) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)); *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004). Even if a court has supplemental jurisdiction over a state law claim, it may decline to exercise that jurisdiction if there are compelling reasons to do so. *See* 28 U.S.C. § 1367(c)(2), (4).

At issue is whether the Court has supplemental jurisdiction over Pepita Defendants' five state law counterclaims and plaintiffs' state law discrimination claim.

**A.     Same Case or Controversy**

    1.     *Pepita Defendants' Counterclaims*

Federal Rule of Civil Procedure 13 governs the process by which a defendant may allege counterclaims, which are either compulsory or permissive. Fed. R. Civ. P. 13(a)-(b). "Before Congress enacted 28 U.S.C. § 1367(a), district courts exercised supplemental jurisdiction only over compulsory counterclaims," *Llanes v. Zalewski*, No. 3:18-cv-00267-SB, 2019 WL 1509992, at *1 (D. Or. Apr. 5, 2019) (citation omitted), or counterclaims that "arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim," Fed. R. Civ. P. 13(a). However, "[t]he § 1367 test for supplemental jurisdiction is broader than the test for compulsory counterclaims." *Sparrow v. Mazda Am. Credit*, 385 F. Supp. 2d 1063, 1067 (E.D. Cal. 2005). "Given that Congress has now granted district courts supplemental jurisdiction over all claims that arise out of the same case or controversy, the test for supplemental jurisdiction over counterclaims is whether the counterclaim shares a common nucleus of operative fact with the federal claim." *Llanes*, 2019 WL 1509992, at *2.

As an initial matter, the Pepita defendants argue that the Court should exercise supplemental jurisdiction because their counterclaims are linked to their seventh and ninth affirmative defenses. However, affirmative defenses do not provide a basis for supplemental jurisdiction. "[B]oth Rule

13 and § 1367 speak only of the relationship between *claims* and contain no reference to the relationship between an affirmative defense and a purported counterclaim." *Ader v. SimonMed Imaging Inc.*, 324 F. Supp. 3d 1045, 1051 (D. Ariz. 2018) (emphasis in original) (citation omitted). The Pepita defendants do not offer any reason for the Court to expand the meaning of § 1367 to include consideration of affirmative defenses, and the Court declines to do so. *See Kokkonen*, 511 U.S. at 377 ("[I]t is to be presumed that a cause lies outside this limited jurisdiction."). Accordingly, the proper analysis for supplemental jurisdiction is whether the Pepita defendants' counterclaims are part of the same case or controversy, *i.e.*, share a common nucleus of operative fact, as plaintiffs' federal claim. *See Llanes*, 2019 WL 1509992, at *2.

There is no common nucleus of operative fact between the facts necessary to prove plaintiffs' FLSA claim and those needed to prove the Pepita defendants' counterclaims. To prove their FLSA claim, plaintiffs will need to show that defendants violated the FLSA by failing to adequately compensate plaintiffs for certain hours and overtime worked. All three plaintiffs claim that they were not paid for the last two pay periods before they were terminated, from December 18, 2023, to January 14, 2024. D. Lopez additionally alleges that a January 4, 2023, paycheck was unpaid, and Flores alleges that he was not paid overtime wages from January 2022 to January 2024. As such, proving plaintiffs' claims will require evidence of the number of hours that each plaintiff worked during these periods and whether and to what extent each plaintiff was compensated for those hours. In contrast, the Pepita defendants' counterclaims derive from plaintiffs' alleged forging of checks and failure to repay loans. Although the Pepita defendants do not specify how long the alleged forging of checks occurred, they allege that D. Lopez and Flores failed to repay loans made over the past six years, which is much longer than the limited timeframes at issue in plaintiffs' claims. Moreover, as plaintiffs argue, proving the Pepita defendants' counterclaims will require evidence of, among other things: whether any plaintiff signed checks on behalf of the Pepita defendants; if they did sign checks, whether they had authority to do so; whether checks signed were self-dealing or done for the benefit of the Pepita defendants; whether check signatures belong to plaintiffs, another employee, or a third party; whether any plaintiff owed a duty to the Pepita defendants and, if so, whether and to what extent it was breached; whether there was a valid contract for repayment of

loaned amounts; and whether any plaintiff still owes the alleged loan amounts. None of these facts have any relevance to plaintiffs' FLSA claim of unpaid wages and overtime.

Even the Pepita defendants' arguments do not support a finding in their favor. The Pepita defendants argue that to defeat plaintiffs' state law discrimination claim, they will produce evidence that plaintiffs were involved in a scheme to embezzle money and convert defendants' property and thus violated their fiduciary duty and duty of loyalty to defendants and breached their employment contracts. However, again, these facts have no logical relationship to those needed to prove plaintiffs' FLSA claim—namely, how many hours plaintiffs worked during the specified time periods and whether they were adequately compensated for that time. The two sets of claims overlap only insofar as each arises from plaintiffs' employment relationship with the Pepita defendants. "Such a relationship is insufficient to establish supplemental jurisdiction[.]" *Ader*, 324 F. Supp. 3d at 1051; *see also Llanes*, 2019 WL 1509992, at *2 (collecting cases) ("[C]ourts in the Ninth Circuit generally find that they lack supplemental jurisdiction over counterclaims where the only shared fact with the plaintiff's FLSA claim is the employment relationship."). Because plaintiffs' federal claim and the Pepita defendants' counterclaims do not arise from a common nucleus of operative fact, the Court lacks jurisdiction and must dismiss the Pepita defendants' counterclaims.

  2. *Plaintiffs' Discrimination Claim*

In their reply, plaintiffs acknowledge that the Court can and should dismiss the state law discrimination claim that plaintiffs added in their first amended complaint after the Pepita defendants asserted counterclaims in their original answer. Like the Pepita defendants' counterclaims, plaintiffs' state law discrimination claim has no basis for jurisdiction in federal court other than supplemental jurisdiction. Plaintiffs' discrimination claim does not share a common nucleus of operative fact as their FLSA claim. Plaintiffs allege that after they filed their original complaint the Pepita defendants retaliated against them by asserting counterclaims in bad faith and with a retaliatory motive. Thus, as alleged, plaintiffs' discrimination claim only involves conduct that occurred after plaintiffs were terminated and initiated this action in state court—namely, the Pepita defendants' filing of counterclaims against plaintiffs. These

allegations have little relationship to the facts needed to prove plaintiffs' FLSA claim, which derives from plaintiffs' allegations of unpaid wages and overtime.  Because plaintiffs fail to establish that this Court has supplemental jurisdiction over their state law discrimination claim, the Court also dismisses *sua sponte* plaintiffs' discrimination claim.  *See Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (quoting *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 n.12 (9th Cir. 2012) ("'[W]hen a federal court . . . lacks subject-matter jurisdiction, the court must dismiss the complaint,' *sua sponte* if necessary.")).

**B.**     **The Court's Discretion**

Even if the Pepita defendants' counterclaims did form part of the same case or controversy as plaintiffs' FLSA claim, there are compelling reasons to decline to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c).  A court may decline to exercise supplemental jurisdiction under any one of the four provisions in section 1367(c), including if "the claim substantially predominates over the claim . . . over which the district court has original jurisdiction" or if "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *Id.* § 1367(c)(2), (4).  "[W]hen deciding whether to exercise supplemental jurisdiction, a federal court should consider and weigh . . . the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (internal quotation marks and citation omitted).  When a district court declines to exercise supplemental jurisdiction pursuant to one of the first three provisions of the statute, the court need not state its reasons for dismissal.  *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998).  However, when the court declines supplemental jurisdiction pursuant to the statute's fourth "exceptional circumstances" provision, the court must "both articulate[] 'compelling reasons' for declining jurisdiction and identif[y] how the situation that it confronts is 'exceptional.'" *Exec. Software N. Am., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 24 F.3d 1545, 1552 (9th Cir. 1994), *overruled on other grounds by Cal Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).

Here, the Pepita defendants' counterclaims would substantially predominate over plaintiffs' FLSA claim.  The facts from which the counterclaims and plaintiffs' FLSA claim arise have minimal overlap, and the amount of evidence that would be needed to prove the Pepita defendants' counterclaims

8

that is irrelevm to plaintiffs' FLSA claim is extensive. Plaintiffs' claim would require straightforward evidence of hours worked and wages paid, whereas the Pepita defendants' counterclaims would require financial and accounting records, identification of individual checks, forensic analysis of allegedly forged documents, and testimony on alleged loan agreements and payments. As such, the counterclaims would likely overwhelm plaintiffs' claim and impede plaintiffs' ability to expeditiously pursue their claim. Additionally, "[f]ederal FLSA policy presents a compelling reason for the court to refuse to exercise supplemental jurisdiction over [a defendant's] counterclaims." *Poehler*, No. 2:15-cv-01161 JWS, 2015 WL 7299804, at *2 (D. Ariz. Nov. 19, 2015). "[T]he public policy of protecting workers' rights to receive and to direct the allocation of their minimum wages means [that c]ounterclaims by employers in FLSA cases should be disfavored." *Yassa v. EM Consulting Grp., Inc.*, 261 F. Supp. 3d 564, 566-67 (D. Md. 2017). Although FLSA policy may not be a sufficient reason on its own to decline to exercise supplemental jurisdiction, *see Llanes*, 2019 WL 1509992, at *3, it is particularly compelling where, as described above, different and largely unrelated bodies of evidence would be needed to prove the two sets of claims. Entertaining these two sets of claims in the same action would thus "unduly complicate the litigation and add little benefit in terms of judicial economy." *Yassa*, 261 F. Supp. 3d at 567. Accordingly, even assuming that the Pepita defendants' state law counterclaims did arise out of the same case or controversy as plaintiffs' FLSA claim, there are compelling reasons to decline to exercise supplemental jurisdiction.

## CONCLUSION

For the foregoing reasons, plaintiffs' Motion to Dismiss, ECF [15], is GRANTED. The Pepita defendants' counterclaims are DISMISSED without prejudice. Plaintiffs' state law discrimination claim is also DISMISSED without prejudice.

IT IS SO ORDERED.

DATED this 17th day of January, 2025.

_____
Adrienne Nelson
United States District Judge