IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DANIEL HECTOR LOPEZ PABLO, JOSE FLORES, and MELANIE LOPEZ HERNANDEZ,<br><br>     Plaintiffs,<br>  v.<br><br>GRACE BUELL, PEPITA'S MEXICAN RESTAURANT & CANTINA, INC., and PAPITO'S MEXICAN RESTAURANT LLC,<br><br>     Defendants. | Case No.: 3:24-cv-01798-AN<br><br><br>OPINION AND ORDER |

Plaintiffs Daniel Hector Lopez Pablo ("D. Lopez"), Jose Flores ("Flores"), and Melanie Lopez Hernandez ("M. Lopez") bring this action against defendants Grace Buell ("Buell"), Pepita's Mexican Restaurant & Cantina, Inc. ("Pepita's," and collectively with Buell, "Pepita Defendants"), and Papito's Mexican Restaurant LLC ("Papito's"), alleging unpaid wages and overtime in violation of Oregon Revised Statutes ("ORS") §§ 652.140 and 652.150 and seeking liquidated damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216. On October 31, 2024, plaintiffs filed their Motion to Compel, ECF [8]. On November 4, 2024, the Pepita Defendants filed their Motion to Compel, ECF [9]. The Court heard oral argument from the parties on December 11, 2024. For the following reasons, plaintiffs' motion is GRANTED in part and DENIED in part, and the Pepita Defendants' motion is GRANTED in part and DENIED in part.

## LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") 26(b)(1) limits the scope of discovery as follows:

> "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties'

1

relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

Fed. R. Civ. P. 26(b)(1). District courts have "broad discretion" in determining whether information sought is relevant for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). The court must limit discovery if it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[,]" or if the proposed discovery is outside the scope permitted by FRCP 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C)(i), (iii).

A party may move for an order compelling a discovery response. Fed. R. Civ. P. 37(a)(3)(B). The movant has the initial burden of demonstrating the relevance of the discovery sought; the burden then shifts to the party opposing discovery to demonstrate why it should not be permitted. *Fed. Trade Comm'n v. Kroger Co.*, No. 3:24-cv-00347-AN, 2024 WL 3400098, at *1 (D. Or. July 12, 2024) (citation omitted).

## BACKGROUND

### A.      Factual and Procedural Background

Plaintiffs assert state law unpaid wages and overtime and federal law liquidated damages claims. Plaintiffs name the Pepita Defendants as their primary or joint employers and Papito's as a successor to Pepita's. Notice of Removal, ECF [1], at 16-25 ("FAC"), ¶¶ 10-13, 15, 17. Plaintiffs allege that the Pepita Defendants terminated them, along with a group of other employees, on January 15, 2024. *Id.* ¶¶ 13, 16, 19. D. Lopez alleges that the Pepita Defendants gave him checks for the two pay periods prior to his termination, from December 18, 2023, to January 14, 2024, and a check dated January 4, 2023, that were all returned by the bank marked "unpaid." *Id.* ¶ 14. D. Lopez alleges that he is owed wages for the three pay periods covered by these checks. *Id.* M. Lopez alleges that she is owed wages and overtime for the two pay periods she worked just prior to her termination. *Id.* ¶ 16. Flores alleges that he is owed wages for the two pay periods he worked just prior to his termination. *Id.* ¶ 19. Additionally, Flores alleges that he

was a non-exempt employee and was required to be paid overtime during the two years, from January 2022 to January 2024, in which he was paid a fixed salary, and that he is owed overtime wages for time worked over forty hours a week since January 2022. *Id.* ¶¶ 17-18, 20. Plaintiffs allege that defendants are liable to D. Lopez for an amount of $12,000.00, to M. Lopez for an amount of $3.352.46, and to Flores for an amount of $100,342.00 for their state law unpaid wages and overtime claim and equal amounts for their FLSA liquidated damages claim. *Id.* ¶¶ 28, 34.

In response, the Pepita Defendants asserted five state law counterclaims, alleging that plaintiffs forged Buell's signature on various business checks and failed to repay loans made to them by the Pepita Defendants. Defs. Pepita's & Buell Answer, Aff. Defs. & Countercls. ("Pepita Defs. Answer"), ECF [11], ¶¶ 53-79. On January 17, 2025, the Court dismissed the Pepita Defendants' counterclaims, as well as plaintiffs' state law discrimination claim, because it lacked supplemental jurisdiction over those claims. Op. & Order of January 17, 2025, ECF [20].

Plaintiffs moved to compel production of documents from defendants on October 31, 2024,[1] and the Pepita Defendants moved to compel production of documents from plaintiffs on November 4, 2024. Pls. Mot. to Compel ("Pls. Mot."), ECF [8]; Defs. Pepita's & Buell Mot. to Compel ("Pepita Defs. Mot."), ECF [9].

**B.    Discovery at Issue**

1.    *Plaintiff's Motion to Compel*

On July 10, 2024, plaintiffs delivered their first Request for Production of Documents ("RFP") on defendants, seeking documents related to wages, company ownership, and successor liability. Pls. Mot. 2; Decl. Samuel Hernandez Supp. Pls. Mot. ("Hernandez Decl."), ECF [8-1], Ex. A ("Pls. First RFP"), at 4-16 (all references to ECF page numbering). On August 12, 2024, the Pepita Defendants and Papito's separately responded to plaintiffs' first RFP. Hernandez Decl. Exs. B, E. At issue are plaintiffs'

---

[1] On November 6, 2024, plaintiffs filed a reply in support of their motion to compel, ECF [12]. Because the Court did not direct plaintiffs to do so, plaintiffs' reply is STRUCK from the record, and the Court does not consider the arguments therein. Local R. 26-3(c).

Requests No. 9, 10, 11, 15, and 21.  Pls. Mot. 2.

        a.      Requests No. 9, 10, and 11

        In Requests No. 9, 10, and 11, plaintiffs requested:

> "[a]ll documents related to [the three plaintiffs'] payroll records as defined and required to be kept by Oregon Administrative Rule 839-020-0080(1) from January 1, 2020 to January 31, 2024, including, but not limited to, (a) timesheets and schedules, (b) hours worked per day, (c) total hours worked during each work week, (d) total daily and weekly straight time earnings, (e) total overtime hours worked each work week, (f) pay stubs, (g) deductions from paychecks, and (h) bonuses paid."

Pls. First RFP 9-10.

        In response to these requests, the Pepita Defendants stated that they "[would] produce the documents responsive to this request that are currently in their possession, custody[,] and control and have been able to locate.  Investigation is continuing, and when and if any documents are located they will be promptly produced."  Pls. Mot. 3.  The Pepita Defendants ultimately produced paystubs for Flores but did not produce paystubs for the other two plaintiffs, and did not produce any timesheets, hours worked, or totals of hours worked for any plaintiff.  *Id.* at 4.

        b.      Request No. 15

        In Request No. 15, plaintiffs requested "[a]ll documents sufficient to show the full name and last known contact information of all employees employed by Defendant Pepito's [*sic*] Mexican Restaurant LLC. [*sic*] from January 31, 2024 to the present."  Pls. First RFP 11 (referring to defendant Papito's).

        In response, Papito's objected to the request as "overbroad, irrelevant, and/or unduly burdensome because Papito's never employed [p]laintiffs."  Pls. Mot. 5.  Papito's also responded that it would provide any confidential business documents upon entry of a protective order.  *Id.*  The Washington County Circuit Court entered a stipulated protective order on August 22, 2024.  State Court Case File, ECF [1-3], at 123-30.  After additional conferral, Papito's ultimately responded that it had no responsive documents.  Pls. Mot. 6.  On December 10, 2024, Papito's produced to plaintiffs a handwritten list of names and last known contact information of ten employees.

c.      Request No. 21

In Request No. 21, plaintiffs requested "[a]ll documents related to the type of business and services provided by Pepita's Mexican Retaurant [*sic*] & Cantina, including food menus, drink menus, and catering options from January 1, 2020 to January 31, 2024."  Pls. First RFP 12.

In response, the Pepita Defendants objected to the request as "overbroad and inclusive, and because it seeks documents which are not relevant and not reasonably calculated to lead to the discovery of admissible evidence, and which are equally accessible on the internet by all of the parties."  Pls. Mot. 4. The Pepita Defendants have not produced any documents responsive to this request.  *Id.* at 5.

2.      *Pepita Defendants' Motion to Compel*

On July 15, 2024, plaintiffs responded to the Pepita Defendants' first RFP.  Decl. Samuel Hernandez Supp. Pls. Opp'n to Pepita Defs. Mot., ECF [9-3], Ex. B.  On September 30, 2024, plaintiffs provided a supplemental response to the Pepita Defendants' first and second RFPs.  *Id.* at Ex. A.  At issue are the Pepita Defendants' Requests No. 7, 8, 9, 10, 20, and 21.  Pepita Defs. Mot. 1.

a.      Request No. 7

In Request No. 7, the Pepita Defendants requested "any and all documents regarding any and all criminal convictions plaintiffs have had within the past 15 (fifteen) years."  *Id.* at 2.

In response, plaintiffs objected to the request "on the grounds that it seeks irrelevant documents not reasonably likely to lead to the discovery of admissible evidence[,]" "that such documents, to the extent they may exist, are not within their custody or control," and "that the scope of is [*sic*] excessive going back 15 years."  *Id.*; Pls. Opp'n to Pepita Defs. Mot. ("Pls. Resp."), ECF [9-2], at 2.  Plaintiffs later gave a supplemental response adding that "[e]xcept as specifically objected, [p]laintiffs are unaware of any responsive documents, have conducted a reasonable search, and no responsive documents are within their possession or control."  Pls. Resp. 3.  Plaintiffs have not produced any documents in response to this request. Pepita Defs. Mot. 2.

b.      Request No. 8

In Request No. 8, the Pepita Defendants requested "any and all documents regarding any

and all other civil litigation plaintiffs have filed, including bankruptcy, since January 1, 2021." *Id.* at 3.

In response, plaintiffs objected to the request "on the grounds that it seeks irrelevant documents not reasonably likely to lead to the discovery of admissible evidence" and "that such documents, to the extent they may exist, are not within their custody or control." *Id.*; Pls. Resp. 3. In their supplemental response, plaintiffs added that "[e]xcept as specifically objected, [p]laintiffs are unaware of any responsive documents, have conducted a reasonable search, and no responsive documents are within their possession or control." Pls. Resp. 3-4. Plaintiffs have not produced any documents in response to this request. Pepita Defs. Mot. 3.

        c.      Request No. 9

In Request No. 9, the Pepita Defendants requested:

> "any and all documents, communications, correspondence, receipts, invoices, W-2 Forms, 1099 Forms and any other state and federal tax and earnings related documents reflecting any compensation plaintiffs received for the calendars years 2022, 2023 and 2024, in any form whatsoever, for any work they performed for any person and/or entity other than their claimed work for defendants Pepita's and/or Buell."

*Id.*

In response, plaintiffs objected to the request "on the grounds that it seeks irrelevant documents not reasonably likely to lead to the discovery of admissible evidence" and "that it is unduly burdensome and overly broad in that it seeks all documents regardless of relevance." *Id.*; Pls. Resp. 3. Plaintiffs have not produced any documents in response to this request. Pepita Defs. Mot. 3.

        d.      Request No. 10

In Request No. 10, the Pepita Defendants requested "any and all bank account statements into which plaintiffs deposited any payments or any and all kinds from defendants Pepita's and/or Buell in the calendars years 2022, 2023 and 2024." *Id.* at 4.

In response, plaintiffs objected to the request "on the grounds that it seeks irrelevant documents not reasonably likely to lead to the discovery of admissible evidence," "that [d]efendants have equal or greater access to the documents requested, and "that it is unduly burdensome and overly broad in that it seeks all documents regardless of relevance." *Id.*; Pls. Resp. 4. Plaintiffs have not produced any

6

documents in response to this request.  Pepita Defs. Mot. 4.

> e.       Request No. 20

In Request No. 20, the Pepita Defendants requested

"any and all documents relating or pertaining to purchases of vegetables by Maria Hernandez and/or Melanie Lopez Hernandez for which they were reimbursed in any and all ways by defendants Pepita's and Buell, including but not limited to receipts for any and all such purchases, documents relating or pertaining to the identities of the persons and/or entities from which any and all such vegetables were purchased, and any and all communications between any such persons and/or entities and Maria Hernandez and/or Melanie Lopez Hernandez."

*Id.* at 4-5.

In response, plaintiffs objected to the request "on the grounds [that] it seeks documents not reasonably likely to lead to the discovery of admissible evidence[,]" that "[d]efendants have equal or greater access to the documents requested[,]" and "to the extent it seeks documents not in their custody or control and from a person not a party to this litigation." *Id.* at 5; Pls. Resp. 4.  Plaintiffs later gave a supplemental response adding that "[s]ubject to their objections, [p]laintiff[s] will produce responsive documents within their custody or control to the extent any exist and can be located using a reasonable search."  Pls. Resp. 5. Plaintiffs argue that they have produced "receipts that were located using a reasonable search." *Id.*  During oral argument, the Pepita Defendants represented that they have sent a subpoena for production of documents to Maria Hernandez ("Hernandez").

> f.       Request No. 21

In Request No. 21, the Pepita Defendants requested "any and all checks which plaintiffs signed as Grace Buell."  Pepita Defs. Mot. 6.

In response, plaintiffs objected to the request "on the grounds [that] it seeks documents not reasonably likely to lead to the discovery of admissible evidence[,]" that "[d]efendants, having access to the Company's finances, bank accounts, and statements, have equal or greater access to the documents requested[,]" and that "it implies joint conduct or actions by [p]laintiffs." *Id.*; Pls. Resp. 6.  Plaintiffs later gave a supplemental response adding that "[e]xcept as specifically objected, [p]laintiffs are unaware of any responsive documents, have conducted a reasonable search, and no responsive documents are within their

possession or control." Pls. Resp. 5. Plaintiffs have not produced any documents in response to this request. Pepita Defs. Mot. 6.

## DISCUSSION

### A.    Plaintiffs' Motion to Compel

1.    *Requests No. 9, 10, and 11*

Plaintiffs argue that the Pepita Defendants were required to maintain payroll and other related records pursuant to Oregon Administrative Rule ("OAR") 839-020-0080(1) and that plaintiffs' requests for payroll records are reasonable and likely to lead to the discovery of admissible evidence. The Pepita Defendants argue that because Papito's is now in control of the restaurant's premises, the Pepita Defendants have not been able to access any documents there. The Pepita Defendants also argue that this request is overbroad because plaintiffs only claim that their last two paychecks were not paid.

Payroll and related records, including timesheets, hours worked, total earnings, pay stubs, deductions, and bonuses paid, are relevant to plaintiffs' claims of unpaid wages and overtime. Additionally, the Court is not convinced by the Pepita Defendants' arguments that they cannot access these records simply because they cannot access the restaurant premises. The Pepita Defendants have been able to produce Flores's pay stubs but do not explain why they have not been able to locate D. Lopez and M. Lopez's pay stubs or any of the other pay-related records, such as timesheets or total hours worked, for any of the plaintiffs, in either physical or electronic form. However, the temporal scope of plaintiffs' requests for these records, which covers a four-year period from January 1, 2020, to January 31, 2024, is not proportional to plaintiffs' claims. Accordingly, the Court grants plaintiffs' motion with respect to Requests No. 9, 10, and 11 as follows. The Pepita Defendants shall produce the requested payroll and related records for D. Lopez covering the time periods from December 1, 2022, to January 4, 2023, and from December 1, 2023, to January 31, 2024; for M. Lopez covering the time period from December 1, 2023, to January 31, 2024; and for Flores covering the time period from January 1, 2022, to January 31, 2024.

2.    *Request No. 15*

Plaintiffs argue that Papito's is required to maintain employment records including their

employees' full names and certain personal information pursuant to OAR 839-020-0080(1) and that documents containing the full names and last known contact information of all Papito's employees are relevant to establishing successor employer liability. Papito's argues that it made a valid objection to producing documents that, after a reasonable and diligent search, were not found to be in its possession, custody, or control. On December 10, 2024, one day before oral argument, Papito's produced to plaintiffs a handwritten list of names and last known contact information of ten employees.

Although Papito's never employed plaintiffs, plaintiffs allege that Papito's is the successor to Pepita's. The issue of successor liability is thus relevant to plaintiffs' claims. Under Oregon law, "[t]o be a 'successor,' as that term is used in ORS [§] 652.310(1), an entity must do more than merely follow its predecessor chronologically; it must conduct a business that 'sustains the like part or character' of the previously conducted business." *Blachana, LLC v. Bureau of Lab. & Indus.*, 354 Or. 676, 689, 318 P.3d 735 (2014). One of the factors appropriate for consideration is "whether the businesses employed substantially the same workforce[.]" *Id.* at 695. Therefore, information regarding individuals employed by Papito's since January 31, 2024, is relevant to plaintiffs' claims. Moreover, plaintiffs' request is limited to only the full names and last known contact information of these employees, which is proportional to the needs of the case.

That Papito's claims that it does not have any documents responsive to this request belies credulity, especially considering that Papito's is required to maintain this information under Oregon law and was able to produce a handwritten list of ten employees' names and contact information the day before oral argument. Moreover, it appears that there are at least some Papito's employees whose names and contact information were not included in the produced list. Accordingly, the Court grants plaintiffs' motion with respect to Request No. 15.

3.     *Request No. 21*

Plaintiffs argue that documents relating to the type of businesses and services provided by Pepita's, including food menus, drink menus, and catering options, are relevant to establishing successor employer liability. The Pepita Defendants again argue that they cannot access the requested menus because

9

they have not had access to the restaurant premises since January 2024.  The Pepita Defendants also argue

that plaintiffs have already obtained menus from Papito's and that the principal of Papito's testified that the

produced menus were the same menus that the Pepita Defendants had used.

Information regarding the types of businesses and services that Pepita's offered is also

relevant to the issue of successor liability.  *See id.* (considering "whether the same product was

manufactured or the same services offered" in determining successor liability).  The Court is similarly

skeptical of the Pepita Defendants' argument that they cannot produce these documents solely because they

lack access to the restaurant premises.  However, the principal of Papito's has testified that its menus are

the same ones that were used by the Pepita Defendants, and Papito's has already produced those menus.  As

such, plaintiffs' requests for menus covering a four-year period from January 1, 2020, to January 31, 2024,

are not proportional to the needs of the case.  Accordingly, the Court denies plaintiffs' motion with respect

to Request No. 21.

**B.      Pepita Defendants' Motion to Compel**

1.      *Request No. 7*

The Pepita Defendants argue that evidence of criminal convictions is admissible as

impeachment evidence.  Plaintiffs argue that they have responded that they have conducted a reasonable

search and that no responsive documents are within their possession or control.

Evidence of criminal convictions from the last fifteen years is not relevant and proportional

to plaintiffs' unpaid wages and overtime claims.  Moreover, plaintiffs have already responded that they do

not have documents responsive to this request.  The Pepita Defendants do not explain any basis that they

have for believing that, despite plaintiffs' response, documents relating to any criminal convictions exist.

Accordingly, the Court denies the Pepita Defendants' motion with respect to Request No. 7.

2.      *Request No. 8*

The Pepita Defendants argue that other civil litigation that plaintiffs may have filed "could

generate, among other things, deposition transcripts which would contain testimony under oath which

would very likely bear upon [] plaintiffs' work with defendants[.]"  Pepita Defs. Mot. 3.  The Pepita

Defendants also argue that documents regarding any bankruptcy that plaintiffs may have filed could demonstrate "whether plaintiffs listed these wage claims as assets of the bankruptcy." *Id.* Plaintiffs argue that they responded that they have conducted a reasonable search and that no responsive documents are within their possession or control.

Evidence regarding other potential civil litigation or bankruptcy proceedings in which plaintiffs may be or have been involved is not relevant to any claim or defense. Furthermore, plaintiffs have already responded that they do not have documents responsive to this request. The Pepita Defendants merely speculate that there may be other civil litigation in which plaintiffs made statements under oath regarding their employment with defendants to such an extent that those statements would be relevant to this action. Even in the unlikely situation that these statements did exist, it is unclear that they would have any relation to the issues in this case. The request for information on bankruptcy proceedings is similarly speculative and irrelevant—even if plaintiffs are or have been involved in bankruptcy proceedings, whether plaintiffs listed these wage claims as assets of a bankruptcy has no bearing on plaintiffs' claims here. The Court will not entertain such a fishing expedition. Accordingly, the Court denies the Pepita Defendants' motion with respect to Request No. 8.

3.      *Request No. 9*

The Pepita Defendants argue that documents relating to taxes and earnings for work done for other employers are relevant to determine what plaintiffs "actually obtained from defendants, particularly if . . . from forged checks as alleged in [the Pepita Defendants'] counterclaims." *Id.* Plaintiffs argue that the requested tax documents are privileged under Oregon law, and that the Pepita Defendants already have the W-2s that they provided to plaintiffs and copies of all checks paid and payments made to plaintiffs from Pepita's accounts. Plaintiffs argue that it is unclear what additional information could be gleaned from the requested tax documents. Plaintiffs further argue that Flores's tax documents will not reveal how much overtime he worked for the Pepita Defendants; rather, the best evidence of Flores's overtime hours would be the Pepita Defendants' own records of Flores's hours worked, time entries, and pay stubs, which the Pepita Defendants were required to maintain pursuant to OAR 839-020-0080(1).

11

The Court has dismissed the Pepita Defendants' counterclaims, and tax and earnings records relating to work that plaintiffs did for persons or entities other than the Pepita Defendants are not relevant to any claim or defense. Whether plaintiffs may have worked for other employers will not indicate the number of hours that plaintiffs worked for the Pepita Defendants or whether plaintiffs were adequately compensated for that work. Contrary to the Pepita Defendants' assertion, the fact that Flores may have worked for other employers will not somehow demonstrate that he did not work overtime hours for the Pepita Defendants. Accordingly, the Court denies the Pepita Defendants' motion with respect to Request No. 9.

4.      *Request No. 10*

The Pepita Defendants argue that plaintiffs' bank account statements are relevant because "defendants are entitled to be able to obtain a better idea of how much plaintiffs deposited in a bank account from defendants and when such deposits were made, which defendants can then correlate with known payments to them and also learn of any such payments which may be currently unknown to defendants." *Id.* at 4. Plaintiffs argue that their bank account statements contain highly sensitive and private information that is largely irrelevant to any claim or defense. Plaintiffs argue that to the extent that the Pepita Defendants require documents to show any improper payments to plaintiffs, they already have such documents through their own business records.

Evidence of deposits of any payments to plaintiffs from the Pepita Defendants is relevant to plaintiffs' unpaid wages and overtime claims because it would demonstrate what wages and other payments the Pepita Defendants paid to plaintiffs. However, to the extent that this request seeks any other information within the bank account statements that is unrelated to plaintiffs' employment with the Pepita Defendants, that information is not relevant or proportional to the needs of the case. Accordingly, the Court grants the Pepita Defendants' motion with respect to Request No. 10 as follows. Plaintiffs shall produce bank account statements reflecting any payments from the Pepita Defendants to plaintiffs covering the following time periods: for D. Lopez, from January 1, 2023, to January 31, 2023, and from December 1, 2023, to January 31, 2024; for M. Lopez, from December 1, 2023, to January 31, 2024; and for Flores, from

January 1, 2022, to January 31, 2024.

     5.     *Request No. 20*

The Pepita Defendants argue that documents relating to purchases of vegetables by Hernandez and M. Lopez are relevant because the Pepita Defendants' counterclaims "basically claim[] that plaintiff [D.] Lopez signed Pepita's checks without authorization made out to his wife and daughter for basically fictitious vegetables[.]" *Id.* at 5. The Pepita Defendants argue that they "are entitled to obtain documents from plaintiffs showing that (1) these checks were legitimate payments for vegetables for defendants' business, or (2) they are part of a scheme to steal large amounts of money from defendants." *Id.* Plaintiffs argue that they have already produced receipts that were located using a reasonable search. Plaintiffs also argue that to the extent that the Pepita Defendants seek information from Hernandez, who is not a party to this suit, they should follow the rules governing discovery from non-parties. During oral argument, the Pepita Defendants represented that they have sent a subpoena for production of documents to Hernandez.

Because the Court has dismissed the Pepita Defendants' counterclaims, documents relating to purchases of vegetables by Hernandez or M. Lopez are not relevant to any claim or defense. Moreover, with respect to this request as it relates to M. Lopez, plaintiffs have already produced receipts that were located using a reasonable search. With respect to this request as it relates to Hernandez, the Pepita Defendants have served a subpoena on her for these documents. Accordingly, the Court denies the Pepita Defendants' motion with respect to Request No. 20.

     6.     *Request No. 21*

The Pepita Defendants argue that they are entitled to obtain checks that plaintiffs signed as Buell "if only to double check the records which defendants currently have or may not have access to." *Id.* at 6. Plaintiffs argue that they responded that they have conducted a reasonable search and that no responsive documents are within their possession or control.

Although the Court has dismissed the Pepita Defendants' counterclaims, evidence of any checks that plaintiffs signed as Buell could be relevant in determining the extent to which plaintiffs have

been compensated by the Pepita Defendants.  However, plaintiffs have already responded that they do not have documents responsive to this request.  Moreover, it is unclear why the Pepita Defendants do not have possession or control of information regarding checks coming from their own business accounts.  As the Pepita Defendants assert in their answer, they "are continuing to examine defendant Pepita's checking accounts and believe[] additional such unauthorized and forged checks will be discovered."  Pepita Defs. Answer ¶ 58.  This shows that the Pepita Defendants have possession or control over their business accounts, which would include records of any checks or payments made from these accounts.  Accordingly, the Court denies the Pepita Defendants' motion with respect to Request No. 21.

## CONCLUSION

For the foregoing reasons, plaintiffs' Motion to Compel, ECF [8], is GRANTED in part and DENIED in part, and the Pepita Defendants' Motion to Compel, ECF [9], is GRANTED in part and DENIED in part.  Plaintiffs' motion is GRANTED with respect to Requests No. 9, 10, 11, and 15 as described above and DENIED with respect to Request No. 21.  The Pepita Defendants' motion is GRANTED with respect to Request No. 10 as described above and DENIED with respect to Requests No. 7, 8, 9, 20, and 21.  The parties are directed to produce the requested documents within fourteen (14) days of this Order.

IT IS SO ORDERED.

DATED this 17th day of January, 2025.

Adrienne Nelson
United States District Judge